UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEROME CEASAR ALVERTO,<br><br>                              Plaintiff,<br><br>      v.<br><br>BARBARA J. GRONSETH, CATHY APLINE,<br><br>                              Defendants. | No. C12-5518 BHS-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  January 10, 2014** |

Before the Court is the motion for summary judgment of Defendants Barbara Gronseth and Cathy Aplin.  In his Amended Complaint, Plaintiff Jerome Ceasar Alverto contends that his First Amendment rights were violated on October 2, 2010 when Defendant Gronseth ordered him to speak English, not Spanish, to another inmate in the law library at the Clallam Bay Corrections Center (CBCC).  He also contends that Defendants retaliated against him by placing him in segregation on June 19, 2012, denying him time in the law library, and separating him from a witness in the law library on October 2, 2012.  ECF No. 34.

Defendants provided notice to Mr. Alverto consistent with *Woods v. Carey*, 684 F.3d 934, 934 (9th Cir. 2012) and Mr. Alverto was granted an extension of time to respond to the motion.  ECF Nos. 50 and 52, respectively.  On November 15, 2013, Mr. Alverto filed a response in opposition.  ECF No. 53.

Based on a review of the motion, opposition, and summary judgment evidence, the undersigned recommends that Defendants' motion for summary judgment be granted.

REPORT AND RECOMMENDATION - 1

**STATEMENT OF FACTS**

Plaintiff Jerome Ceasar Alverto is a Washington State prisoner currently incarcerated at the Coyote Ridge Corrections Center (CRCC). Defendants Gronseth and Aplin are employees of the Department of Corrections (DOC) at the CBCC, where Mr. Alverto was previously housed.

In October 2, 2010, Ms. Gronseth observed two inmates in the CBCC law library speaking Spanish to one another which seemed odd to her because she knew that both of these inmates spoke and wrote English fluently and she had not seen them speaking Spanish in the law library previously. ECF No. 49, Exhibit 1, Declaration of Barbara Gronseth, § 3. The two inmates were inmate Jerome Alverto, DOC #322854, and inmate Luciano Tonelli, DOC #845829. Ms. Gronseth does not speak or understand Spanish and she was concerned that these inmates were talking about something inappropriate and were speaking Spanish instead of English so that correctional staff would not know what they were talking about. Ms. Gronseth was also concerned because just prior to this incident Mr. Tonelli had walked away from her desk and was agitated. Ms. Gronseth advised these inmates to speak English rather than Spanish so she could ensure they were not talking about something inappropriate. Neither of these inmates was infracted or punished in any way for speaking Spanish. Mr. Alverto and Mr. Tonelli filed grievances over this incident and as a result Ms. Gronseth was advised that inmates were allowed to speak in any language in the law library and she has followed that directive since then. *Id.*

On June 12, 2012, Mr. Alverto filed this lawsuit (signed on May 23, 2012), against Ms. Gronseth and others relating to the October 21, 2010 incident. ECF No. 1. An affidavit filed by Mr. Alverto setting out his claims against Ms. Gronseth, was notarized by Ms. Gronseth on April

REPORT AND RECOMMENDATION - 2

9, 2012.  ECF No. 1-1, at 9-10.  Mr. Alverto's application to proceed in forma pauperis was granted on July 12, 2012 (ECF No. 7) and his amended complaint, filed after the Court's order to amend to amend or show cause (ECF No. 11), was filed on August 9, 2012.  ECF No. 14.  Mr. Alverto attached another affidavit setting out his claims against Ms. Gronseth.  That affidavit was also notarized by Ms. Gronseth.  ECF No. 34, at 28-29.  On September 13, 2012, the Court directed service of the amended complaint on the named defendants, including Barbara J. Gronseth.  ECF No. 16.

Between the filing of his original complaint and his amended complaint, Mr. Alverto approached Ms. Gronseth in the CBCC law library on June 19, 2012 to obtain copies of interrogatories he wished to send to the Attorney General's office in this case.  Ms. Gronseth advised Mr. Alverto that according to her understanding of DOC policy, he could not get copies of such documents by incurring debt to DOC unless he was filing the documents with the court.  Mr. Alverto vigorously argued with Ms. Gronseth that he could get copies of the documents by incurring debt to DOC and that he did not have to file the documents with the court.  ECF No. 49, Exhibit 1, Gronseth Decl., § 4.  According to Ms. Gronseth, Mr. Alverto was upset and tried to get other inmates in the law library involved in this situation to support his position.  Mr. Alverto eventually submitted a copy request that included mailing his legal documents to the court and he received the copies he requested by incurring debt to DOC.  *Id.*  The Court's docket shows that these interrogatories were received in the Clerk's office and returned to Mr. Alverto by mail on June 22, 2012.

Inmate Faron W. Roper states that he observed Mr. Alverto asking Ms. Gronseth to make legal copies and that Ms. Gronseth refused to make the copies.  He states that Mr. Alverto did

REPORT AND RECOMMENDATION - 3

not raise his voice, threaten, or attempt to intimidate Ms. Gronseth.  ECF No. 53, Declaration of

Faron W. Roper, p. 16.  In his declaration, Mr. Alverto states that Ms. Gronseth refused to make

photocopies of interrogatories that he intended to send to the Washington State Attorney's office

and instead read the interrogatories to someone on the telephone, complained about Mr. Alverto,

and said that she wished he would no longer be there when she returned from vacation.  ECF No.

53, Declaration of Jerome Ceasar Alverto, p. 23.

Ms. Gronseth states that she found Mr. Alverto's response to be threatening and

intimidating.  As noted by Mr. Alverto, Ms. Gronseth documented his behavior of June 19, 2012,

but did not recommend an infraction:

> I/M's behavior in the law library was very intimidating and manipulative in
> challenging me and the DOC policy for photocopying.  And to the point of getting
> the other I/M's in the law library to agree to the fact and testify as witnesses that I
> was denyin [sic] (OBC).

ECF No. 53, p. 21

Ms. Gronseth wrote the foregoing incident report at the request of Office Cathy Aplin, an

acting Sergeant at CBCC, who witnessed some of Ms. Gronseth's interactions with Mr. Alverto.

ECF No. 49, Exhibit 1, Gronseth Decl., § 5.  Ms. Gronseth did not infract or punish Mr. Alverto

for his actions on June 19, 2012 and she did not request that he be placed in segregation.

However, it appears that on that same date Mr. Alverto was placed in segregation by Lt.

McKenney pending an investigation into his behavior in the law library on June 19, 2012.  ECF

No. 49-1, p. 12.

Officer Aplin was making a normal security walk-through of the CBCC library on June

19, 2012.  Officer Aplin states that it was obvious to her that something was not right between

Mr. Alverto and Ms. Gronseth.  According to Officer Alpin, it appeared that Mr. Alverto was

REPORT AND RECOMMENDATION - 4

trying to make Ms. Gronseth comply with his demands and Ms. Gronseth appeared to be trying to convince Mr. Alverto that she was properly following DOC policy.  Officer Aplin observed Ms. Gronseth call someone, who she believed was Denise Larson, to verify that she was proceeding properly under DOC policy.  ECF No. 49, Exhibit 2, Declaration of Cathy Aplin, § 3.

According to Mr. Alverto, when Ms. Gronseth was on the telephone, she read his interrogatories to the person with whom she was speaking and stated "You see what (referring to me) I have to put up with?  Oh, its Alverto again, wanting legal copies.  It would be a blessing if when I come back from vacation, he (referring to me) was no longer here."  ECF No. 53, p. 23.

Officer Aplin states that she handed Ms. Gronseth a note asking her if everything was alright as she was not completely familiar with how the law library worked.  Ms. Gronseth did not answer her note but Officer Aplin felt compelled to remain in the law library.  It was Officer Aplin's conclusion that Mr. Alverto was being intimidating and demanding toward Ms. Gronseth and getting uncomfortably close to her.  At that point Officer Aplin ordered Mr. Alverto to stand back and allow Ms. Gronseth to do her job.  Officer Aplin remained in the law library until Ms. Gronseth had completed the work she was doing for Mr. Alverto.  When Officer Aplin exited the law library she advised several other staff members in the area to keep an eye out on the law library because of her concerns about Mr. Alverto's actions and his attitude.  Officer Aplin talked with Correctional Unit Supervisor McGarvie about this incident and then asked Ms. Gronseth to write an incident report detailing her interactions with Mr. Alverto.  When Officer Aplin read Ms. Gronseth's incident report it appeared to her that Ms. Gronseth had allowed the inmate to go too far and should have gotten security staff involved sooner and Officer Aplin advised Ms. Gronseth as such.  *Id*.

REPORT AND RECOMMENDATION - 5

Based on the incident in the law library, Mr. Alverto was placed in administrative segregation (Ad Seg) by Lt. Kenneth McKenney on June 19, 2012 pending further investigation. DOC records show that Mr. Alverto was released from segregation after about 20 days on July 9, 2012 and was not issued a prison infraction over the June 19, 2012 incident. An Administrative Segregation Review Report by Miles Lawson, CS3, dated July 9, 2012, states the reason for Mr. Alverto's placement in Ad Seg as "for investigation of intimidating a staff member and inciting in the law library." The report states further:

> The investigation has been completed. The investigator reports that they viewed the video of the incident several times and interviewed the staff who were present. After all facts and evidence were weighed, no disciplinary action will be forthcoming and the investigator recommends release from administrative segregation.

ECF No. 53, at 25.

While Officer Aplin did not place Mr. Alverto in Ad Seg or have any authority to place him in segregation, she agreed with such placement as he was, in her opinion, creating a hostile and intimidating situation in the law library for Ms. Gronseth. ECF No. 49, Exhibit 2, Aplin Decl., § 5.

According to Mr. Alverto's allegations in his verified Second Amended Complaint, he was granted priority access to the law library on June 21, 2012. This was granted while he was still in Ad Seg. On July 11, 12, and 13, Mr. Alverto states that Ms. Gronseth denied him access to the law library. He then asserts that his personal restraint petition was dismissed as frivolous because he was denied access to the law library. He has not, however, presented any facts to support that conclusory statement.

REPORT AND RECOMMENDATION - 6

1           Ms. Gronseth was on vacation from June 21, 2012 to July 5, 2012.  When she returned to

2  work, she was not aware that Mr. Alverto had been granted priority status for law library access.

3  However, as soon as she received documentation that he was granted priority status, she put Mr.

4  Alverto on the callout for law library access for July 12, 2012. Mr. Alverto was denied priority

5  access to the law library for 3 or 4 days in July only because Ms. Gronseth was unaware that he

6  had been granted priority status. Ms. Gronseth was personally unaware that he had any court

7  deadline for which he needed priority law library access.  ECF No. 49, Exhibit 1, Gronseth Decl.,

8  § 7.

9

10          On October 2, 2012, Ms. Gronseth observed Mr. Alverto sitting at a law library computer

11  with inmate Roper, DOC #270975.  Neither of the inmates was using the computer which is used

12  by inmates in the law library to conduct legal research.  According to Ms. Gronseth, there are

13  usually inmates waiting to use the computers in the law library, therefore Ms. Gronseth

14  approached inmates Alverto and Roper and told Mr. Alverto to move to a table in the middle of

15  the library room.  According to Mr. Alverto, there were no inmates waiting to use the computer

16  that day.  ECF No. 53, at 32.  Later, Ms. Gronseth observed Mr. Alverto give Mr. Roper some

17  papers.  Ms. Gronseth then approached Mr. Roper and observed that he was preparing an

18  affidavit from a statement Mr. Alverto had written out and given to him.  Ms. Gronseth told Mr.

19  Roper that he was not writing the affidavit about what had occurred on June 19, 2012 in his own

20  words.  Ms. Gronseth told both inmates that she would be documenting their behaviors in their

21  behavior logs (ECF No. 49, Exhibit 1, Gronseth Decl., § 8) which she in fact did.  See ECF No.

22  53, p. 21.  Not surprisingly, there are factual disputes as to what Mr. Roper was or was not doing.

23

24

25

26

REPORT AND RECOMMENDATION - 7

It is also unclear on what authority Ms. Gronseth was observing the work being done by inmates in the law library and directing the content of their writing.

Mr. Alverto states that on October 2, 2012, he occupied one of the law library computers to conduct legal research, that he sought assistance from Inmate Faron Roper, and as previously noted, that there was no one else waiting to use the computer he occupied or any other computer in the law library.  ECF No. 53, Alverto Decl., p. 32.  Inmate Terry Moncritt states that he was in the law library on October 2, 2012 and that "staff there told Mr. Roper and Mr. Ceasar Alverto not to be working together."  ECF No. 53, Declaration of Terry Moncritt, p. 41.  Mr. Roper states that Ms. Gronseth grabbed the affidavit he was working on and read it without his permission. Therefore, she discovered that the affidavit was about the June 19, 2012 incident.  Mr. Roper states that he was not copying Mr. Alverto's words but had merely requested Mr. Alverto to provide him with the proper spelling of all names.  ECF No. 53, Roper Decl., p. 34.  Mr. Alverto confirms Mr. Roper's version of what occurred in the law library that day.  He also states that Ms. Gronseth became confrontational and threatened to infract him.  ECF No. 53, Alverto Decls., pp. 36, 37.

In an affidavit dated October 7, 2012 attached to Mr. Alverto's Amended Complaint, Mr. Alverto describes the October 2, 2012 occurrence.  Mr. Alverto stated in this affidavit that because of Ms. Gronseth's behavior, he was unable to present Mr. Roper's affidavit in this case. However, the record reflects that Mr. Roper has submitted at least two affidavits in this case.  He further claims that Ms. Gronseth called someone on the phone and stated that "they're [me and Mr. Roper] making an affidavit about me (Gronseth)" and "Lieutenant."  *Id.*, p. 29.  As noted

REPORT AND RECOMMENDATION - 8

1    above, the affidavit dated October 7, 2012 was notarized by Ms. Gronseth.  ECF No. 34, at 28-

2    29.

3         Ms. Gronseth did not issue an infraction and denies that she threatened to infract either

4    Mr. Alverto or Mr. Roper for their behavior on October 2, 2012.  She took no action against

5    either inmate for their actions on October 2, 2012 (ECF No. 49, Exhibit 1, Gronseth Decl., § 9),

6    other than to make a notation in what has been referred to as a Behavior Log.  According to Ms.

7    Gronseth, all of the actions she took concerning Mr. Alverto were only for the safety and security

8    of the institution but she does not explain further than that conclusion.  She denies that she took

9

10   any action against Mr. Alverto because he filed litigation or grievances against her or anyone

11   else.  *Id.*, § 10.

12
                                 **STANDARD OF REVIEW**
13

14        The Court shall grant summary judgment if the movant shows that there is no genuine

15   dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

16   Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

17   of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

18   1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

19   any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

20   absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato

21   Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local

22

23   rules in opposing a motion for summary judgment does not relieve the moving party of its

24   affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.

25   Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

26

REPORT AND RECOMMENDATION - 9

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

## DISCUSSION

**A.      State of Washington and Washington Department of Corrections**

Defendants move to dismiss the State of Washington and Washington Department of Corrections from this suit and request that the Court decline to exercise pendent jurisdiction over state claims against these parties.  These entities are not named as parties in Mr. Alverto's Amended Complaint.  ECF No. 34.  Although the parties are still listed on the Court's docket, the docket notes that they were "terminated" from the action on December 11, 2012, when the amended complaint was filed.

REPORT AND RECOMMENDATION - 10

1    Accordingly, Defendants' motion to dismiss the State of Washington and Washington

2 Department of Corrections should be denied as moot.

3 **B.     First Amendment – Speaking Spanish in Law Library**

4    Mr. Alverto contends that Defendant Gronseth violated his First Amendment rights by

5 telling him and another inmate to speak English, rather than Spanish, in the prison law library.

6 He alleges that he was assisting the other inmate by "translating a legal matter into the Spanish

7 language to help the offender understand the legal matter."  ECF 34, Plaintiff's Amended Civil

8 Rights Complaint, p. 3, ¶ 1e.

9

10    It is well established that prisoners do not have an independent First Amendment right to

11 assist other inmates in litigation related matters.  *Shaw v. Murphy*, 532 U.S. 223 (2001); *Gibbs v.*

12 *Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993); *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir.

13 1990); *Gassler v. Rayl*, 862 F.2d 706, 707-08 (8th Cir. 1988).  Prisoners also do not have a First

14 Amendment right to communicate with other inmates. *Turner v. Safley*, 482 U.S. 78, 91-93

15 (1987*); Farnell v. Peters*, 951 F.2d 862 (7th Cir. 1992); *Gometz v. Henman*, 807 F.2d 113 (7th

16 Cir. 1986).

17

18    Ms. Gronseth's directive to Mr. Alverto to speak English did not constitute a violation of

19 Mr. Alverto's First Amendment rights.   In addition, Mr. Alverto has suffered no compensable

20 harm or damage resulting from Defendant Gronseth's directive to speak English.  Mr. Alverto

21 was not infracted or punished in any way for speaking Spanish.  Accordingly, Mr. Alverto has

22 failed to raise an issue of material fact with regard to his First Amendment claim and it should be

23 dismissed.

24

25

26

REPORT AND RECOMMENDATION - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**C.     Retaliation**

When a prisoner alleges retaliation, he must prove five elements: (1) that he was subjected to adverse action; (2) the adverse action was imposed because of certain conduct; (3) the conduct that gave rise to the adverse action is legally protected; (4) the adverse action chilled the prisoner's speech; and (5) the adverse action did not advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Plaintiff must also show that the retaliation was the substantial or motivating factor behind the conduct of the prison official.  *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S 274, 285-87 (1977); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

Because claims of retaliation are easy for inmates to allege, courts examine such claims with skepticism to avoid interfering too much with prison operations.  See *Canell v. Multnomah County*, 141 F. Supp. 2d 1046, 1059 (D. Or. 2001) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).  Furthermore, courts should review prisoner retaliation claims in light of the United States Supreme Court's "disapproval of excessive judicial involvement in day-to-day prison management."  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 515 U.S. 472, 482 [1995]).  Timing cannot support a claim for retaliation unless the complaint contains other factual material to support the inference of retaliatory motive because an inmate who has filed a grievance is still subject to standard prison practices after the filing of a grievance.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Pratt*, 65 F.3d at 808.

**1.      Defendant Aplin – June 19, 2012 Incident**

The record reflects that Officer Aplin witnessed Mr. Alverto's conduct in the library, spoke to her supervisor, and then asked Ms. Gronseth to write an incident report.  The record

REPORT AND RECOMMENDATION - 12

also reflects that the incident report and Officer Aplin's conversation with her superior led to an

investigation of Mr. Alverto's conduct and that during the investigation, he was placed in Ad Seg

on June 11, 2012 by Lt. Kenney.  However, there is no evidence that Officer Aplin acted with

retaliatory intent and no evidence that she took punitive action to chill Mr. Alverto's

constitutionally protected activity.

Mr. Alverto suggests that Officer Aplin made a false report concerning the June 19, 2012

incident, but there is no evidence that she wrote an incident report.  Officer Aplin testified that

she observed what she thought was inappropriate behavior by Mr. Alverto in the law library and

agreed with the decision to place Mr. Alverto in segregation.  There is no evidence that Officer

Aplin was aware of any grievances or lawsuits filed by Mr. Alverto or that her actions were

motivated by the filing of this lawsuit.  In fact, in June of 2012, Officer Aplin had not been

named as a defendant herein and there is no evidence that Officer Aplin was otherwise aware

that this lawsuit had been filed.

Viewing the evidence in the light most favorable to Mr. Alverto, the Court finds no

genuine issue of material fact relating to Mr. Alverto's claims of retaliation against Defendant

Aplin and recommends that Defendant Alpin's motion for summary judgment be granted.

**2.      Defendant Gronseth – June 19, 2012 Incident**

Mr. Alverto contends that Ms. Gronseth's statement to an unknown person on the

telephone that "it would be a blessing if when I come back from vacation, he (referring to me)

was no longer here" shows her retaliatory intent because he was placed in segregation shortly

after she made that statement.  ECF No. 53, Alverto Decl., p. 23.  However, Mr. Alverto's belief

that Ms. Gronseth was speaking about him and the timing of this statement alone is insufficient

REPORT AND RECOMMENDATION - 13

proof of retaliation.  A "plaintiff's belief that a defendant acted from an unlawful motive, without

evidence supporting that belief, is no more than speculation or unfounded accusation about

whether the defendant really did act from an unlawful motive."  *See Carmen v. San Francisco*

*Unified School Dist.*, 237 F.3d 1026, 1028.

Ms. Gronseth stated in her report that Mr. Alverto "ranted very loudly so everyone in the

law library (12 I/Ms) could hear that I was denying him access to the courts."  ECF No. 49,

Exhibit 1, Gronseth Decl., Attachment A.  Inmate Faron Roper disputes that Mr. Alverto raised

his voice, but acknowledges that he heard Mr. Alverto ask Ms. Gronseth to make copies for him.

ECF No. 53, Exhibit 1.  Mr. Roper also states that at no time did he observe Mr. Alverto

"threaten or attempt to intimidate the law librarian," (ECF No. 53, Exhibit 1), while Ms.

Gronseth stated in her incident report that Mr. Alverto's "behavior and comments were very

challenging to anything I stated about policy and he was intimidating and manipulating the

situation."  ECF No. 49, Exhibit 1, Attachment A.

Inmate Roper and Ms. Gronseth disagree on whether Mr. Alverto raised his voice.  They

also disagree on whether Mr. Alverto's behavior could have been perceived as intimidating or

manipulative.  However, Mr. Alverto admits that he and Ms. Gronseth argued about whether or

not discovery should be sent to the Court and he admits that he told Ms. Gronseth that she was

violating his "constitutional civil rights" by reading and discussing the discovery he had given

her to copy.  ECF No. 53, Exhibit 4.  It is also undisputed that after observing Mr. Alverto and

Ms. Gronseth, Officer Aplin intervened and ordered Mr. Alverto to stand back to allow Ms.

Gronseth to do her job because she had concluded that Mr. Alverto was being intimidating and

demanding toward Ms. Gronseth and getting uncomfortably close to her.  The record also

REPORT AND RECOMMENDATION - 14

reflects that it was Officer Aplin who reported the incident to the unit supervisor, who asked Ms. Gronseth to write an incident report detailing her interactions with Mr. Alverto, and who agreed that Mr. Alverto's placement in Ad Seg was appropriate in light of his behavior.  Mr. Alverto fails to refute Ms. Gronseth's evidence that she did not take any action against him as a result of the June 19, 2012 incident and that she did not ask that he be placed in segregation.

Viewing the facts in the light most favorable to Mr. Alverto, the Court concludes that Defendants' are entitled to summary judgment on this claim.

### 3.    Defendant Gronseth - July 2012 Priority Access to Law Library

There is no dispute that Mr. Alverto was denied priority law library access for several days in July 2012, but here again there is no evidence that this denial was retaliatory.  Rather, the record reflects that the denial was an inadvertent one based on Ms. Gronseth's absence from the workplace.  Even if it is assumed that Ms. Gronseth was negligent in ensuring that Mr. Alverto received priority law library access, such conduct is not unconstitutional.  See *Wood v. Ostrander,* 851 F.2d 121 (9th Cir. 1988).

Viewing the evidence in the manner most favorable to Mr. Alverto, the undersigned concludes that his retaliation claim is without merit and should be denied.

### 4.    Defendant Gronseth – October 2, 2012 Incident

The parties' versions of what occurred in the CBCC library on October 2, 2012 are essentially the same except that Mr. Alverto claims that Ms. Gronseth told Mr. Roper to "discontinue working on the affidavit or risk receiving an infraction" and that she "threatened to infract" Mr. Alverto, while Ms. Gronseth denies threatening to infract either Mr. Roper or Mr. Alverto.  ECF No. 53, Exhibit 8; ECF No. 48, Exhibit 1.  It is undisputed that Ms. Gronseth did

REPORT AND RECOMMENDATION - 15

not infract Mr. Alverto or Mr. Roper, that Mr. Roper viewed Ms. Gronseth's statement to be an idle threat, and that Mr. Roper provided Mr. Alverto several affidavits shortly after October 2, 2012.

In order to establish a retaliation claim, a plaintiff must demonstrate a threat of harm that is more than minimal which would have a chilling effect on the First Amendment activities of a "person of ordinary firmness." *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009).  The standard of whether or not an alleged retaliatory action or threat of action has a chilling effect is therefore an objective one and it is immaterial whether or not the action or threat of action had any actual effect of the plaintiff.  *Id.*  The courts have found actionable retaliation when prison officials threaten to discipline inmates or threaten to transfer inmates to a different institution for exercising their First Amendment rights.  *Hines v. Gomez,* 108 F.3d 265 (9th Cir. 1997) (false and retaliatory discipline charge resulting in 10 days confinement and loss of television privileges); *Rhodes, supra,* (threat of a transfer to a different prison and destruction of personal property); *Gomez v. Vernon,* 255 F.3d 118 (9th Cir. 2001) (repeated attempts to transfer inmate to a different prison which caused the inmate to quit his job in the prison law library.)

Ms. Gronseth's alleged threat to Mr. Roper is insufficient to establish Mr. Alverto's retaliation claim because the threat was not taken seriously by Mr. Roper who viewed it as an idle threat and shortly thereafter provided multiple declarations for Mr. Alverto's use in this lawsuit. An idle threat that was not taken seriously by the recipient of the idle threat would not, as it did not in this case, have a chilling effect on the First Amendment activities of a person of ordinary firmness.  *Brodheim, supra.*

REPORT AND RECOMMENDATION - 16

Ms. Gronseth's alleged threat to Mr. Alverto also fails to meet the threshold level to establish a retaliation claim:

> As I exited the law library, Gronseth became confrontational and threatened to infract me and to stop me from accessing the law library; simply because I obtained a blank affidavit form from the law library clerk (at Mr. Roper's request), and gave it to him.

See ECF No. 53, Exhibit 8.  As noted by Defendants, Mr. Alverto's October 7, 2012 affidavit (Exhibit 8) is, ironically, notarized by Ms. Gronseth.  It is therefore, reasonable to assume that Mr. Alverto, like Mr. Roper, did not take Ms. Gronseth's threat to infract him seriously as he continued to file multiple affidavits – both his own and Mr. Roper's.

Viewing the facts in the light most favorable to Mr. Alverto, the Court concludes that he has failed to establish that Ms. Gronseth's threat to infract him would have or in fact, had, a chilling effect on the exercise of constitutional rights by a person or ordinary firmness. Therefore, Defendants are entitled to summary judgment on this claim.

**D.      Access to Courts Claim**

Mr. Alverto also argues that his right of access to the courts was violated by DOC and/or Ms. Gronseth when he was forced to send discovery to the federal court on June 19, 2012, when he was denied priority law library access for several days in July 2012, and when Ms. Gronseth allegedly told him and Mr. Roper on October 2, 2012, that she would infract them if he obtained declarations from Mr. Roper.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the United States Supreme Court held that inmates possess a fundamental constitutional right of access in order to contest the fact, the duration and conditions of their confinement.  *Id.* at 822-23.  This however does not mean that inmates are "guarantee[d] the wherewithal to transform themselves into litigation engines

REPORT AND RECOMMENDATION - 17

1    capable of filing everything from shareholder derivative actions to slip-in call claims." *Lewis v.*

2    *Casey*, 518 U.S. 343, 355 (1996).

3            In order to establish a violation of the right of access to courts, an inmate must have

4    standing. *Lewis*, 518 U.S. 343.  In *Lewis*, the Supreme Court held that that standing in an access

5    to courts claim requires that an inmate allege both that he was denied access to legal materials or

6    advice and that this denial harmed his ability to pursue non-frivolous legal action that is, the

7    inmate must show actual injury.  The Ninth Circuit defined actual injury as "some specific

8    instances in which an inmate was actually denied access to the courts."  *Sands v. Lewis*, 886 F.2d

9    1166, 1170-71 (9th Cir. 1989).  Moreover, the Ninth Circuit has held that the right to affirmative

10   assistance from the state to ensure meaningful access to the courts does not extend beyond the

11   initial pleading phase.  *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995); *Silva v. DiVittorio*,

12   658 F3.d 1090, 1102 (9th Cir. 2011).   Prisons have no legal obligation to affirmatively assist

13   inmates with litigation after the pleading state of an action challenging a conviction, sentence, or

14   conditions of confinement.  *Id.*, at 1102.   However, once beyond the pleading stage of litigation,

15   prisons may not actively and unreasonably interfere with an inmate's pending ligation.  *Id.*, at

16   1102.

17           The June 19, 2012, incident involved discovery documents in this case and the October 2,

18   2012, incident involved Mr. Alverto's procurement of evidence to support his claims in this case.

19   Because both these incidents occurred beyond the pleading stage in this case, Mr. Alverto had no

20   right to affirmative assistance from the State in these incidents to ensure his right of access to

21   courts.  *Silva v. DiVittorio, supra*.

REPORT AND RECOMMENDATION - 18

With regard to Mr. Alverto's July 2012 priority law library access, Mr. Alverto has not established what kind of case he was working on or the stage of that litigation. Mr. Alverto also does not allege nor has he demonstrated that he was denied all law library access. Moreover, Mr. Alverto provides no evidence of any harm or injury resulting from being prevented from having priority law library access for several days in July 2012.

There is also no evidence to support a claim of active interference. The June 19, 2012, incident did not amount to an interference with Mr. Alverto's right of access to the courts as it is undisputed that Mr. Alverto received copies of his discovery documents and was allowed to send those documents to the Defendants. The lack of priority access to the law library in July 2012 does not constitute active interference because Mr. Alverto has not shown that he was prevented from filing any legal documents with the Court and Ms. Gronseth did not actively interfere with Mr. Alverto's litigation because she was not aware that he had been allowed priority access to the law library. Additionally, the October 2, 2012, incident does not constitute active interference because Mr. Alverto was not prevented from securing declarations from Mr. Roper or filing legal documents with the Court, and he suffered no harm or injury by the alleged threats from Ms. Gronseth in this case or any other case he may have been litigating.

Based on the foregoing, the undersigned recommends that Mr. Alverto's access to courts claim be denied and Defendants' motion for summary judgment on this issue be granted.

**E.      Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

REPORT AND RECOMMENDATION - 19

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful.  *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

As the Court has concluded that Mr. Alverto has failed to raise material issues of fact relating to his constitutional claims, it is not necessary to address the question of qualified immunity.

### CONCLUSION

For the reasons stated above, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No.49) be **GRANTED**; that Plaintiff's claims against Defendants Barbara J. Gronseth and Cathy Alpine be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 10, 2014,** as noted in the caption.

**DATED** this <u>16th</u> day of December, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20